UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARRY SEARCY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT WALDEN, Idaho Correctional Industries Production Manager; ALAN ANDERSON, Idaho Correctional Industries General manager; JENNIFER PANTNER, ISCI Correctional Officer; KEITH YORDY, ISCI Warden; in their individual and official capacities; and KEVIN MICHELSON, Idaho Correctional General Manager and AL RAMIREZ, ISCI Warden; in their official capacities,<br><br>　　　　Defendants. | Case No. 1:15-cv-00537-BLW<br><br>**INITIAL REVIEW ORDER** |

　　Before the Court is Plaintiff Barry Searcy's Amended Complaint (Dkt. 91). The Court Granted Mr. Searcy leave to amend based on newly-discovered evidence, and now reviews the Amended Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## BACKGROUND

　　Plaintiff Barry Searcy is a prisoner in the custody of the Idaho Department of Correction proceeding pro se and in forma pauperis in this civil rights action. On

INITIAL REVIEW ORDER - 1

November 12, 2015, Plaintiff filed a Complaint alleging that Defendants Scott Walden, Jennifer Pantner, Idaho Correctional Industries, and several un-named persons, Does 1-10, had violated various Idaho state laws, and violated his rights under the First Amendment. Dkt. 3 at 15-23. When Plaintiff filed this action, it was initially assigned to the Honorable Candy W. Dale, United States Magistrate Judge in accordance with this Court's then-applicable case assignment procedures. Judge Dale screened the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and issued an Initial Review Order ("IRO") on March 15, 2016. Dkt. 8. Judge Dale's IRO allowed Plaintiff to proceed on the First Amendment retaliation claim against Defendants Pantner and Walden, but dismissed Plaintiff's three state-law claims, and dismissed Defendant Idaho Correctional Industries as a defendant.

Plaintiff chose not to amend his complaint in the time allotted by the Scheduling Order, and the parties proceeded through discovery. Defendants filed a Motion for Summary Judgment on January 4, 2017, which was denied without prejudice on August 29, 2017, with supplemental briefing invited by the Court. Dkt. 42. Defendants filed their Second Motion for Summary Judgment on October 10, 2017, and this case was reassigned shortly thereafter to District Court Judge B. Lynn Winmill. On April 26, 2018, nearly two and a half years into the case, Plaintiff made the first request for leave to file an amended complaint. Dkt. 57. The Court granted Plaintiff leave to file an amended complaint outside the case management schedule based on the existence of newly-discovered evidence, but did not upset the case management deadlines previously set by Judge Dale. Dkt. 90

INITIAL REVIEW ORDER - 2

## LEGAL STANDARD

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Id*. (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id*. (internal quotation marks omitted).

Plaintiff brings claims under Idaho state law, as well as claims under 42 U.S.C. § 1983, the federal civil rights statute. To state a colorable claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (emphasis added).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) fail[ed] to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09. A plaintiff cannot simply restate these standards of law in a complaint; instead, a plaintiff must provide specific facts supporting the elements of such a claim, and he must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

"While prisoners enjoy many protections of the Constitution, imprisonment carries with it the circumscription or loss of many significant rights," and "maintaining institutional security and preserving internal order and discipline may require prison

**INITIAL REVIEW ORDER - 4**

officials to curtail certain constitutional rights." *Escalanti v. Lewis*, 933 F.2d 1013 (9th Cir. 1991) (unpublished) (citing *Hudson v. Palmer*, 468 U.S. 517, 524 (1983), and *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

## FACTUAL ALLEGATIONS

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho State Correctional Institution (ISCI). Plaintiff is also one of the class representatives in *Balla v. IDOC*, Case No. 1:81-cv-01165-BLW (D. Idaho), an ongoing class action case involving the conditions of confinement at ISCI.

Plaintiff has, at different times, worked as an employee of Correctional Industries ("CI")—a state entity established for the purpose of "caus[ing] the inmates in the state prison to be employed . . . in the production" of goods and services provided to the government, to nonprofit organizations, or to other parties for public use. Idaho Code § 20-413. Plaintiff has also worked other jobs at the prison, including a job as a recreation scheduling clerk in the gym, in positions that are not affiliated with CI. Inmates working with CI are paid more than those with other prison jobs, and no prison job pays as much as a minimum-wage job outside of prison. *See* Dkt. 91.

Although most inmates have a cellmate, some single cells are available at the prison. Living in a single cell is a privilege, and single cells generally are considered by inmates to be superior to double cells. There are two types of single cells: a "regular" single cell and a "mini-single-cell," which is smaller than a regular single cell and, therefore, less desirable to inmates. *See id* at 10.

**INITIAL REVIEW ORDER - 5**

At some point in the past, ISCI had a policy regarding housing inmates in single cells that allowed inmates with any prison job—including non-CI jobs—to request a single cell. The inmate employees would be placed on a single-cell waiting list. Over a period of some years, Plaintiff had worked his way up near the top of the waiting list as a gym clerk (which was not a CI job). Several years ago, ISCI changed the single-cell policy, restricting single-cell eligibility to inmates with a CI job, not just any prison job. *Id* at 9-10. Because Plaintiff, at that time, held a non-CI job, his name was removed from the waiting list.

In January of 2013, apparently believing that his removal from the waiting list was a result of prison staff retaliating for Plaintiff's litigation activities, Plaintiff successfully moved to voluntarily dismiss a civil rights action in this Court in which Defendant Scott Walden, the CI production manager, was a named defendant. In addition, after serving as a class representative in *Balla* for 9 years, Plaintiff moved to terminate his representative status in July of 2013. *Id* at 7-8. The very next month, allegedly as a result of Plaintiff's dismissal of his lawsuit and request to terminate his *Balla* participation, Defendant Walden hired Plaintiff to work at Correctional Industries. A few days after Walden hired Plaintiff to work at CI, the Court in *Balla* denied Plaintiff's motion to terminate his representative status. *Id*.

Now eligible for single-cell status, as a CI employee, and believing that he remained at the top of the waiting list, Plaintiff asked Defendant Jennifer Pantner—an ISCI correctional officer—if he could be transferred into a single cell that was available on Plaintiff's housing tier. Defendant Pantner responded, "No, you are at the bottom of

**INITIAL REVIEW ORDER - 6**

the waiting list." *Id* at 9. Following a discussion between Balla counsel, Plaintiff was again placed at the top of the single-cell waiting list. The warden and the housing lieutenant agreed that Plaintiff should receive "the next available single cell." *Id.*

The "next available single cell" was a regular single cell, which became available in September of 2013. However, rather than place Plaintiff in this cell, Defendant Pantner tried to assign Plaintiff to one of the "mini-single-cells." *Id.* Plaintiff complained to Pantner's superiors, and Pantner later assigned Plaintiff to a regular single cell.

On Plaintiff's first day of work at CI, he informed Defendant Walden of the Balla Court's decision to deny Plaintiff's motion to terminate his representative status; he also told Walden that Plaintiff's continued "service as a Class Rep would require that there would be times [Plaintiff] needed to attend Balla related matters during CI work hours. *Id* at 11-12. Initially, Walden offered to work with Plaintiff and asked only to be "kept in the loop" with respect to when Plaintiff needed time off from his CI job to engage in Balla-related matters.

Plaintiff worked at CI for several months, received satisfactory evaluations, and was given a raise. However, in December of 2013, Walden told Plaintiff that Walden had hired him "with the understanding that he was no longer a part of the Balla case." *Id.* Walden also told Plaintiff that he knew about Plaintiff's difficulties in obtaining a single cell, even though Plaintiff had not informed Walden of these difficulties, and Walden later acknowledged that he had discussed the single-cell issue with Defendant Pantner.

Walden gave Plaintiff an ultimatum: "You have a choice to make – either work at CI or do Balla, but you can't do both." Dkt. 91-1 at 5. Plaintiff was given this ultimatum

INITIAL REVIEW ORDER - 7

despite the fact that other CI workers were allowed to take time off "for education, programs, etc." *Id.* At a later meeting, Walden told Plaintiff, "I only hired you because you weren't part of Balla. Now you are a part of Balla, you are one of its leaders, and you told me you were out of it." *Id.* Plaintiff informed Walden that "his decision was that he was not quitting Balla, and that he was not voluntarily quitting CI either." *Id.* Walden then dismissed Plaintiff from CI.

Plaintiff was rehired at the prison gym and began working there again in January of 2014. Plaintiff asked to retain his single cell even though he no longer worked at CI, and "Unit 13 staff" said that this would not be problem as long as Plaintiff had a job. *Id* at 9-10. Plaintiff alleges that Defendant Pantner "attempted to get his Gym job taken away" by entering a C-note in Plaintiff's file that stated,

> [Plaintiff] was terminated from his job at Correctional Industries on 12-31-13. He is not eligible for work for six months. He was terminated by Scott Walden[,] head supervisor of Correctional Industries for attendance issues.

*Id* at 10. According to the Complaint, Plaintiff did not have "attendance issues" at his CI job. As a correctional officer working on housing placement, Pantner was aware that if Plaintiff was dismissed from the gym job and was not allowed to work for six months, he would lose his single-cell assignment.

Plaintiff now brings federal civil rights and state law claims against Defendants Walden, Anderson, Pantner, and Yordy in their personal and official capacities, and Michelson, and Ramirez in their official capacities.

## ANALYSIS

**INITIAL REVIEW ORDER - 8**

Plaintiff amended his complaint on January 29. 2019 to incorporate recently-discovered evidence, name new defendants, and add additional claims. Dkt. 91. Mr. Searcy added significant factual detail to his amended complaint, relying on the newly-discovered evidence from fellow prisoner Tom Wilson. *Id.* He also names several new Defendants: Alan Anderson the ICI General Manager and Keith Yordy, ISCI Warden, in their individual and official capacities; and Kevin Michelson, Idaho Correctional General Manager and Al Ramirez, ISCI Warden; in their official capacities. *Id.* The Amended Complaint adds Counts VII and VIII, which allege Defendants Walden and Anderson conspired, and engaged in a pattern of racketeering activity in violation of Idaho Code Section 18-7804 *et seq*. Dkt. 91-3.

### 1. Mr. Searcy's Idaho RICO and Conspiracy Claims are Time-Barred

Mr. Searcy's Amended Complaint includes extensive allegations of racketeering activity and conspiracy to commit racketeering activity in violation of Idaho law against Defendants Walden and Anderson, managers at ISCI. Dkt. 91-2 at 10-14. Mr. Searcy alleges that while he was working at CI between August and December, 2013 Defendants Walden and Anderson participated in a racketeering scheme that failed to pay CI employees the wages they were entitled by 18 U.S.C. § 1761(a) & (c)(2). Dkt. 91-3 at 2. Mr. Searcy explains that he identified this pay discrepancy "a few months after he started work at CI," sometime in 2013. Dkt. 91-1 at 2. Mr. Searcy brings these claims against Defendants Walden and Anderson for the first time in his Amended Complaint.

The Court will not allow Plaintiff to proceed on his Idaho RICO claims because they are time-barred. This Court has previously noted that "Idaho has looked to federal

**INITIAL REVIEW ORDER - 9**

court interpretations of RICO to discern the meaning of parallel provisions in their legislation." *Wavetronix, LLC v. Swenson*, No. 4:12-CV-244-E-MJP, 2015 WL 12778001, at *2 (D. Idaho Feb. 2, 2015); *see also State v. Nunez*, 981 P.2d 738, 742 (1999). Although Idaho's Racketeering statute does not include its own statute of limitations provision, Idaho law provides a four-year statute of limitations period that applies to these claims. *See* I.C. § 5-224. The Supreme Court has held that the four-year clock begins to run on civil RICO claims upon the "discovery of the injury, not discovery of the other elements of the claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Evans v. Arizona Cardinals Football* Club, LLC, No. 17-16693, 2019 WL 459857, at *1 (9th Cir. Feb. 6, 2019). Although the Amended Complaint is not clear on the exact date, Mr. Searcy alleges generally that he learned of the pay discrepancy sometime in late 2013. Dkt. 91-1 at 2. At the latest, therefore, the clock to file such claims ran out in December 2017. Plaintiff brings the Idaho RICO claims in his Amended Complaint, filed in January, 2019. Dkt. 91. As a result, the Court will not allow Plaintiff to proceed on Claims VII and VIII in his Amended Complaint.

    2. **Plaintiff's Claims Under Idaho Law**

In Claims 4, 5, and 6, Plaintiff contends that Defendants have violated Idaho's Correctional Industries Act, Idaho Code § 20-401 *et seq*. ("the Act"), by failing to pay inmate employees "wages at a rate not less than that paid for work of a similar nature in the locality in which the work was performed." Dkt. 91-2 at 3-8. However, the Act does not entitle an inmate worker to such compensation. Indeed, inmate workers are not entitled to any compensation at all.

The Act provides that a prisoner "who is engaged in productive work ... may receive for his work such compensation as the [Board of Correction] shall determine, to be paid out of any funds available in the correctional industries betterment account. Such compensation, if any, shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance." Idaho Code § 20-412. The permissive terms "may receive" and "if any" both establish that Plaintiff has no state-created right to be paid wages at all, much less wages that are similar to those paid free citizens outside of prison. Therefore, Plaintiff has not stated a plausible claim under Idaho state law, and the Court will not allow him to proceed on Claims 4, 5 and 6.

### 3. First Amendment Retaliation Claims

As in his original complaint, Plaintiff alleges that Defendants Walden and Pantner retaliated against him for his litigation activities and his use of the prison grievance system. A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to assert a plausible retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his

constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). See also Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) ("The [de minimis] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted); *ACLU of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 786 n.6 (4th Cir. 1993) (per curiam) ("[T]hese § 1983 plaintiffs suffered no more than a de minimis inconvenience and . . . , on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment.").

Liberally construed, Plaintiff's Complaint states a plausible claim that Defendants Walden and Pantner retaliated against Plaintiff for exercising his constitutional rights. Defendant Walden allegedly informed Plaintiff that he had to choose between his prison job and his class representative status in Balla; further, the fact that other inmates were allowed time off from their CI jobs to participate in prison programs raises a reasonable inference that Walden may have dismissed Plaintiff from CI out of a retaliatory motive. And because prisoner employment and single-cell status are desirable privileges to inmates, the prospect of losing a prison job or a single cell appears sufficient to chill a prisoner's exercise of his constitutional rights.

Plaintiff has stated also a plausible claim that Defendant Pantner retaliated against him by attempting to ensure that Plaintiff was not placed in a single cell. Such actions include placing him at the bottom of the waiting list for a single cell and placing a C-note—which included a false reason for Plaintiff's dismissal from CI—in Plaintiff's file in an attempt to have him dismissed from his gym job, thereby losing single-cell status.

The Plaintiff may also proceed with the above-identified retaliation claims against Defendants Anderson and Yordy. "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (emphasis added). Mr. Searcy has plausibly alleged that both supervisors "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1205-09; Dkt. 91-

1 at 12-13. Although the causal link is thin, Mr. Searcy's allegations that both Defendants Anderson and Yordy were directed the IDOC grievance process and individually reviewed his complaints against Defendants Walden and Pantner, but failed to act, is sufficient for him to proceed against those supervisor Defendants at this stage as well.

For the above reasons, Plaintiff may proceed on his First Amendment retaliation claims against Defendants Walden, Pantner, Anderson, and Yordy.

## ORDER

**IT IS ORDERED:**

1. Plaintiff may proceed on his First Amendment retaliation claims against Defendants Walden Pantner, Anderson, and Yordy. Plaintiff may not proceed on any other claims against any other Defendants at this time.

2. The Parties shall not engage in any further discovery. As the Court indicated in its January 7, 2019 Order, the discovery deadline has passed in this case, and none of the claims remaining after the Court's Initial Review Order suggest discovery should be reopened.

3. Dispositive Motions: All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs by **May 27, 2019**. Responsive briefs to such motions shall be filed **within 30 days** after service of motions. Reply briefs, if any, shall be filed **within 14 days** after service of responses. Submission of an earlier motion for summary judgment addressing procedural issues does not foreclose any party from later filing a motion for summary judgment on the merits.

4. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.

5. Alternative Dispute Resolution (ADR). Should Plaintiff and any Defendant wish to attend a settlement conference, they shall file a stipulation to attend settlement conference, and the case will then be referred to the Court's ADR Director.

DATED: April 16, 2019

B. Lynn Winmill
U.S. District Court Judge